## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| _____ )<br><br>MARGARET BOZGOZ, *et al.*,   )<br>   )<br>   Plaintiffs,   )<br>   )<br>   v.   )<br>   )<br>VONCELLE JAMES,   )<br>*Supervisory Management Analyst,*   )<br>*VBAOCR*, *et al.*,   )<br>   )<br>   Defendants.   )<br>_____ ) | Civil Action No. 19-0239 (ABJ) |

## <u>MEMORANDUM OPINION</u>

Plaintiffs Margaret and Robert Bozgoz, proceeding *pro se*, have brought this lawsuit alleging various torts and violations of federal statutes against twenty-nine defendants, twenty-eight of whom are federal employees, and the majority of those worked at the Department of Veterans Affairs ("VA"). *See* Fourth Am. Compl. [Dkt. # 41]; Order [Dkt. # 45] ("Order Severing Case"). Mr. Bozgoz is a former employee of the VA, and he claims that he was denied reasonable accommodations and discriminated against when a request for overtime was denied in January of 2018 and during the events that ensued thereafter. *See generally* Fourth Am. Compl. Mrs. Bozgoz acts as her husband's "Americans with Disabilities Act Representative," and in that role, she has pursued administrative relief on Mr. Bozgoz's behalf. *Id.* ¶ 4.

The purpose of this opinion is to address the pending motions to dismiss, and the Court thinks it is important to announce at the start that the lawsuit <u>will</u> go forward: plaintiffs' employment discrimination claims under Title VII, the Age Discrimination in Employment Act, and the Rehabilitation Act will <u>not</u> be dismissed.

Defendants moved to dismiss all of plaintiffs' claims, except for the Title VII claims. Defs.' Mot. to Dismiss [Dkt. # 52] ("Defs.' Mot."). Defendant Judge Del Toro filed a separate motion to dismiss the claims against her on the basis of judicial immunity, among other reasons. Def. Del Toro's Mot. to Dismiss [Dkt. # 57] ("Del Toro's Mot."). Plaintiffs have opposed both motions. Pls.' Opp. to Defs.' Mot. [Dkt. # 60] ("Pls.' Opp."); Pls' Opp. to Del Toro's Mot. [Dkt. # 64].[1]

For the following reasons, the Court will grant in part and deny in part defendants' partial motion to dismiss, and it will grant defendant Judge Del Toro's motion to dismiss.

## BACKGROUND

### I. Factual Background

The complaint is quite long and it takes issue with a large number of people and events, but the Court will endeavor to summarize the key allegations here. Robert Bozgoz (hereinafter "Mr. Bozgoz") is a "service-disabled Veteran and former employee of the VA." Fourth Am. Compl. ¶ 1. He alleges that sometime in January of 2018, he asked to work overtime on the Martin Luther King, Jr. holiday, and his request was denied. See id. ¶ 2. Plaintiffs allege that Voncelle James, the Supervisory Program Analyst at the Veterans Benefits Administration ("VBA"), denied Mr. Bozgoz's overtime request on the basis of his race. Id. ¶¶ 2–3. Mr. Bozgoz is a white man, and his supervisor is African American. Id.

Angela Kendrix, the Deputy Director of the VBA, scheduled a meeting with Mr. Bozgoz and his supervisor James to discuss the claim of racial discrimination. Fourth Am. Compl. ¶ 3. Plaintiff Margaret Sue Bozgoz (hereinafter "Mrs. Bozgoz") asserts that she is Mr. Bozgoz's

---

1       Defendant Dr. Anne Klein, proceeding *pro se*, filed a pleading answering the allegations but also asserting multiple defenses such as failure to state a claim, improper service, improper venue, etc. *See* Klein's Answer & Counter-Claims [Dkt. # 54]. As explained later, the Court will treat those arguments as a motion to dismiss.

"[r]epresentative" under the Americans with Disabilities Act ("ADA"), and she complains that she was not allowed to participate at the meeting despite her status.[2]  *Id*.  On January 18, 2018, Mrs. Bozgoz filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on behalf of her husband.  *Id*. ¶¶ 5–6; *id.* at 221.  That day, Mr. Bozgoz sent a message to Kevin Brown, the "Reasonable Accommodations Coordinator" of the VBA, *id.* at 15, stating that he intends to file an EEO Complaint and that "[h]e would like to update his 2016 [reasonable accommodation]."  *Id.* ¶ 5.[3]

According to the complaint, the agency conducted an internal investigation into the events of January 11–12, 2018.  Fourth Am. Compl. ¶ 8.  Plaintiffs allege that the investigation was initiated in retaliation for raising the discrimination claims, and that the investigation triggered a series of events in which the employees of the VA engaged in a conspiracy to deprive them of their rights by, among other things, purposefully ignoring emails and phone calls, asking for medical documents when they were not entitled to them, and denying Mr. Bozgoz reasonable accommodations.  *Id*. ¶¶ 7–36.  On January 31, 2018, according to the plaintiffs, the VA department employees "conspire[d]" and issued Mr. Bozgoz a letter of reprimand.  *Id.* ¶ 16.  Plaintiffs also allege that during this time, defendants forged a number of documents and "designed" claims against them.  *Id*. ¶¶ 15–25.

On February 9, 2018, the internal fact-finding report was completed, and a copy was provided to Mr. Bozgoz's supervisors.  Fourth Am. Compl. ¶ 19.  Over the next few days, plaintiffs allege, agency personnel "coordinate[d]" and "designed" Mr. Bozgoz's EEO claims.  *Id*. ¶¶ 20–

---

2       There is no allegation in the complaint that Mrs. Bozgoz is employed by the VA.  *See generally* Fourth Am. Compl.

3       The record does not include any clear statement of what sort of accommodation Mr. Bozgoz received from his employer in 2016.

22.   On February 13, 2018, Mr. Bozgoz offered to participate in mediation with the agency, *id.* ¶ 26, but plaintiffs allege that the agency was not interested in mediation. *Id.* ¶ 27. At some point, Mrs. Bozgoz requested that Mr. Bozgoz be transferred to Georgia as a reasonable accommodation, but the request was refused. *Id.* ¶¶ 31–32. Plaintiffs mention "2016 Reasonable Accommodations" which are not further described, and they state that those were also denied. *Id.* ¶¶ 32–40. Mr. Bozgoz also allegedly requested two weeks of leave on February 24, 2018, but the request was ignored, and he repeats in connection with this allegation that reasonable accommodations were "delayed/denied." *Id.* ¶ 45.

Throughout the spring, the couple attempted to update the EEO complaint, although they contend that the claims were never properly amended. *See* Fourth Am. Compl. ¶¶ 46–53, 72, 74, 76, 81, 83–85, 92, 106. For example, on February 25, 2018, Mrs. Bozgoz submitted twenty-one additional claims on Mr. Bozgoz's behalf to the Office of Resolution Management ("ORM") of the VA. *Id.* ¶ 46. Plaintiffs allege that the claims were never added to Mr. Bozgoz's file. *Id.* ¶¶ 46–53, 74. On or about March 30, 2018, EEO counselor Angela Myers "submit[ted] 9 claims" to Mrs. Bozgoz, but plaintiffs allege that the claims were incorrect and did not reflect the EEO complaint accurately. *Id.* ¶ 72; *see id.* ¶ 106 (alleging that the VA "replaced his 62 claims with ORM's 9 outdated claims").[4]

At some point in March or April of 2018, mediation was scheduled, Fourth Am. Compl. ¶ 77, although it was later canceled. *Id.* The complaint alleges that the pattern of unlawful conduct continued for the next few months: their grievances were not recorded or heard, and all of this was being done to discriminate and retaliate against Mr. Bozgoz on account of his disability, race,

---

4      Defendants attached a "Notice of Acceptance" letter to their motion to dismiss which outlines nine events that were alleged in plaintiffs' EEO complaint and accepted by the agency to conduct an investigation. Notice of Acceptance Letter [Dkt. # 52-1] ("NOA Letter").

or age.  *See id.* ¶¶ 56–98.  Plaintiffs claim that on April 24, 2018, an "ineffective" reasonable accommodation was approved for Mr. Bozgoz.  *Id.* ¶ 82; *see id*. ¶ 89.  In mid-May, Mr. Bozgoz asked for administrative leave so that he could pursue his EEO claims against the agency, but that request was denied.  *Id.* ¶¶ 99–100.

Sometime that spring, the VA hired a third-party, Dr. Anne Klein, to investigate plaintiffs' claims.  *See, e.g.*, Fourth Am. Compl. ¶¶ 102, 106.

The alleged harassment continued through the summer of 2018:  plaintiffs claim that they continued to be subjected to "fraud, waste and abuse" on the part of the VA through the agency's investigation and the administrative process.  Fourth Am. Compl. ¶¶ 100–112.  Additional reasonable accommodations, such as teleworking or a transfer, were requested but they were denied.  *Id*. ¶¶ 120, 123–124, 126–27, 146, 149–50.  Plaintiffs also state that Mr. Bozgoz requested sick leave and administrative leave but the requests were denied.  *Id.* ¶¶ 112, 155, 157.[5]  In August of 2018, the agency proposed suspending Mr. Bozgoz.  *Id*. ¶ 154.  Later that month, on August 14, 2018, Mr. Bozgoz suffered a stroke, and plaintiffs allege that they asked for 240 hours of "emergency leave," and that request was also denied.  *Id*. ¶ 161.  They also allege that they requested several Occupational Safety and Hazards Act inspections, which were denied.  *Id.* ¶¶ 164, 168.  Mr. Bozgoz served his suspension in September 2018.  *Id.* ¶ 176.

At the end of August 2018, plaintiffs' claims reached an EEOC Administrative Law Judge.  Fourth Am. Compl. ¶ 173.  Plaintiffs allege that various VA employees submitted false documents

---

5    Plaintiffs characterize all of the requests – for leave, for transfers, for telework, etc. – as requests for reasonable accommodations. The complaint does not describe the specific nature of the disability that any particular request was intended to accommodate, how any request related to Mr. Bozgoz's disability or disabilities, or in what way anything requested would have enabled Mr. Bozgoz to perform the essential functions of his job or enable him to enjoy the benefits and privileges of his employment.

to the judge, *id.* ¶¶ 184–86, 190–93, and that the judge mishandled the case. *Id.* ¶¶ 182, 190–91. On November 29, 2018, the Administrative Law Judge issued an order of dismissal. *Id.* ¶ 204.

## II.    Procedural Background

This action was initiated on January 29, 2019. Compl. [Dkt. # 1]. Margaret Bozgoz and her son, Austin Bozgoz, filed a complaint supported by over three hundred pages of exhibits against forty-two defendants, most of whom were employees of the Department of Veterans Affairs. The allegations included violations of the Rehabilitation Act, the Racketeer Influenced and Corrupt Organizations Act, the Occupational Safety and Health Act, and the Americans with Disabilities Act, among others. *See* Compl. [Dkt. # 1]. The claims centered around the discrimination and retaliation allegedly visited upon Robert Bozgoz, the federal employee in the family, but Mr. Bozgoz was not named as a plaintiff in the case.

The Court issued an order requiring plaintiffs to show cause why they had standing to pursue claims on behalf of their family member. Order [Dkt. # 3]. On February 14, 2019, plaintiffs filed an amended complaint, but the standing issue still remained, and the Court issued a Minute Order modifying the Order to Show Cause to refer to the claims in the Amended Complaint. Am. Compl. [Dkt. # 4]; Min. Order (Feb. 15, 2019). In an apparent response to all of this, Robert Bozgoz moved to intervene in the case on March 7, 2019. Mot. to Intervene [Dkt. # 5]. The Court granted the motion and dismissed Austin Bozgoz from the case, because the plaintiffs' son had not asserted any claims on his own behalf. Order [Dkt. # 7]. Because the complaint did include claims alleging discrimination and retaliation on behalf of Margaret Bozgoz, the Court did not dismiss her as a plaintiff at that time, although it limited her participation to pursuing claims asserted on her own behalf. *Id.* at 2–3.

There have been a number of procedural developments that do not bear on the resolution of the motion, and they will not all be summarized here. *See generally* Mot. for Service by U.S.

Marshal [Dkt. # 20]; Motion for Recusal [Dkt. # 24]; Mot. for Leave to Amend [Dkt. # 32];

Motions for Reconsideration [Dkt. ## 36, 39].   The filing of significance here is the Fourth

Amended Complaint, filed on August 15, 2019, which is the operative document in this case.

Fourth Am. Compl.

At the time the Fourth Amended Complaint was filed, it contained a number of new

allegations regarding events that occurred after plaintiffs filed their initial complaint.  Among other

things, these paragraphs related to plaintiffs' attempts to serve the defendants, criminal

proceedings in Maryland that arose out of the service disputes,[6] and plaintiffs' repeated attempts

to secure the Court's recusal from the matter.  In order to harmonize the rule that a judge must

disqualify herself if she is a party to the proceeding, 28 U.S.C. § 455(b)(5)(i), and the advice of

the Judicial Conference Committee on Codes of Conduct that a judge should not encourage

attempts to manipulate the proceedings by disqualifying herself from all matters involving a

litigant who sues the judge, the Court severed the claims related to events that took place after the

case was first filed, including the claims against the Court itself and state court officials, and it

retained control of the original case.  Order [Dkt. # 45] ("Order Severing Case").[7]

On October 17, 2019, defendant Dr. Anne Klein, proceeding *pro se*, filed an answer to the

Fourth Amended Complaint and two counter-claims for defamation and emotional distress against

plaintiffs.  Answer & Counter Claims [Dkt. # 54].  In her submission, Dr. Klein asserted that

plaintiffs had failed to state a claim against her, and she raised other defenses that could be the

---

6       Plaintiffs' process server Lance Fulgium has moved to intervene on multiple occasions but
those motions have been denied.  *See* Mot. to Intervene [Dkt. # 32]; Mot. to Intervene [Dkt. # 35];
Min. Order (July 25, 2019); Min. Order (Oct. 3, 2019).

7       The severed claims were submitted to the court's Calendar and Case Management
Committee for reassignment.  Order Severing Case at 3.

subject of a motion under Rule 12, including improper service. *Id.* On November 18, 2019, while this was not called for by the federal rules, plaintiffs responded to Dr. Klein's responsive pleading, Pl.'s Resp. [Dkt. # 62], and they characterized Dr. Klein's pleading as a motion to dismiss. *Id.* at 14. So, the Court will construe those portions of Dr. Klein's pleading setting forth grounds for the dismissal as a motion to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94 ("A document filed *pro se* is to be liberally construed.") (internal quotation marks omitted).

On October 18, 2019, twenty-five federal employee defendants filed the combined motion to dismiss that is before this Court at this time. Federal Gov't Defs.' Mot. to Dismiss [Dkt. # 52] ("Defs.' Mot."). On October 25, 2019, two additional defendants joined the pending motion to dismiss. *See* Mot. to Join [Dkt. # 55], Min. Order granting motion (Nov. 21, 2019). Defendant Judge Frances Del Toro filed a separate motion to dismiss on November 13, 2019. Del Toro's Mot. to Dismiss [Dkt. # 57]. Plaintiffs opposed both motions. Pls.' Opp.

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679, citing *Twombly*, 550 U.S. at 556.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than

a sheer possibility that a defendant has acted unlawfully." *Id*.  A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*., quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

In evaluating a motion to dismiss under Rule 12(b)(6), a court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005).  Therefore, when considering a motion to dismiss, a court must construe a complaint liberally in the plaintiff's favor.  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Nevertheless, the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions.  *Id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice."  *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).  Where the action is brought by a *pro se* plaintiff, the Court must construe his filings liberally and hold the complaint to "less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *see also Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014).

**ANALYSIS**

Plaintiffs' prolix and discursive complaint raises a host of claims arising out of the alleged discrimination in January 2018 and the administrative proceedings that followed.  The Fourth Amended Complaint includes the following claims (as they are denoted by the plaintiffs):[8]

> **Claim 1**:  Discrimination and retaliation based on age, race, disability, and sex in violation of Title VII, the Rehabilitation Act, the Age Discrimination in Employment Act, and the Americans with Disabilities Act.  Fourth Am. Compl. at 31.
>
> **Claim 2**:  Constitutional violations under 42 U.S.C. § 1983 as well as *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).  Fourth Am. Compl. ¶ 279.
>
> **Claim 3**: Common law causes of action, such as conspiracy, assault, perjury, false imprisonment, slander.  Fourth Am. Compl. ¶ 307.
>
> **Claim 4**: Privacy Act Violations.  Fourth Am. Compl. ¶ 308.
>
> **Claim 5**: Violations of the Occupational Safety and Health Act.  Fourth Am. Compl. ¶ 309.
>
> **Claim 6**: "Statutory Discrimination."  Fourth Am. Compl. ¶ 310.
>
> **Claim 7**:  Constructive Discharge.  Fourth Am. Compl. ¶ 311.
>
> **Claim 8**:  Violations of the Racketeer Influenced and Corrupt Organizations Act.  Fourth Am. Compl. ¶ 312.
>
> **Claim 9**:  Fair Labor Standards Act violations.  Fourth Am. Compl. ¶ 313.
>
> **Claim 10**: "Whistleblowing Activity."  Fourth Am. Compl. ¶ 314.
>
> **Claim 11**:  Negligence.  Fourth Am. Compl. ¶ 315.

---

8    The Court notes that the Fourth Amended Complaint purports to bring claims on behalf of Lance Fulgium, but since he has never been permitted to intervene as a plaintiff in this lawsuit, the Court need not consider those claims here.

**Claim 12**:  Emotional Distress.  Fourth Am. Compl. ¶ 316.

Defendants have moved to dismiss all of the claims except for Claim 1 insofar as it asserts a Title VII claim against Robert Wilkie, in his official capacity as head of the VA, in connection with those events described in the agency's "Notice of Acceptance" letter, which defendants attached to their motion.  Defs.' Mot. at 8, citing Notice of Acceptance Letter, Ex. 1 to Defs.' Mot. [Dkt. # 52-1] ("NOA Letter").

For the reasons stated below, plaintiffs' Title VII, Rehabilitation Act, and Age Discrimination in Employment claims will be moving forward.  All of the other claims will be dismissed.

## I.   Claim 1 & Claim 7:  Employment Discrimination Claims

In Claim 1, plaintiffs allege that defendants violated Title VII, the Rehabilitation Act, the Age Discrimination in Employment Act ("ADEA"), and the Americans with Disabilities Act ("ADA").  Defendants move to dismiss all claims "with the sole exception of certain claims raised under Title VII[.]"  Defs.' Mot. at 1.

As an initial matter, the Court notes that since it is the Rehabilitation Act that protects federal workers with disabilities, and the "ADA does not apply to employees of the federal government because the federal government is not considered an employer under the ADA[,]" *Klute v. Shinseki*, 797 F. Supp. 2d 12, 17 (D.D.C. 2011), any claims brought under the ADA will be dismissed.  *See also* 42 U.S.C. § 12111(5)(B)(i) (specifically excluding "the United States" from the definition of "employer"); *Richardson v. Yellen*, 167 F. Supp. 3d 105, 117 (D.D.C. 2016), *order clarified*, No. CV 14-1673 (RMC), 2016 WL 10688800 (D.D.C. May 26, 2016), and *aff'd sub nom. Richardson v. Fed. Reserve Bd. of Governors of Fed. Reserve Sys.*, No. 16-5166, 2017 WL 2332597 (D.C. Cir. Feb. 2, 2017).  To protect federal workers, Congress incorporated the

11

ADA's anti-discrimination and anti-retaliation provisions into the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq.*  *See Woodruff v. Peters*, 482 F.3d 521, 526 (D.C. Cir. 2007).  Therefore, the Rehabilitation Act is "the exclusive remedy for employment discrimination based on a disability for federal employees."  *Raines v. U.S. Dep't of Justice*, 424 F. Supp. 2d 60, 64 (D.D.C. 2006) (internal citations and quotation marks omitted).

This leaves the claims under the ADEA, Rehabilitation Act, and Title VII.  Defendants claim that most of them have not yet been administratively exhausted, and they move to dismiss all of the employment discrimination claims, except for those portions of the Title VII claim based on events enumerated in the "Notice of Acceptance" letter sent by the VA's Office of Resolution Management ("ORM").  *See* NOA Letter.  Defendants contend that any allegations not described in the letter – which recited the claims that had been submitted to the agency at that time – have not been administratively exhausted and must be dismissed. Defs.' Mot. at 6–7.

The letter states that the following nine events described in plaintiffs' EEO complaint, filed on February 28, 2018, were considered by the agency:

1. On November 27, 2017, Voncelle James (VJ), Lead Management Analyst, denied Complainant's leave request.

2. On January 11 and 12, 2018, VJ denied Complainant overtime (OT) requests and denied his request to have his American Disability Act (ADA) representative in attendance to discuss why his OT was denied.

3. On January 17, 2018, Kevin Brown (KB), Human Resources Specialist, informed Complainant that the paperwork approving his 2016 reasonable accommodation (RA) was missing and instructed Complainant to resubmit another RA request.

4. On or about January 19, 2018, VJ demanded that the Complainant meet with her without his ADA representative to discuss the events surrounding the January 11 and 12, 2018 incidents and the reason for the denied OT.

5.  On January 24, 2018, Melvin Gerrets, Chief, Program Operations, informed Complainant that there would be a fact-finding conducted regarding the January 11-12, 2018 incident when Complainant allegedly refused to speak with VJ without his ADA representative being in attendance.

6.  On or about January 28, 2018, VJ denied being aware of Complainant's 2016 approved RA, which is to telework two days a week, allow the attendance of his ADA representative when requested and ad-hoc telework whenever Complainant's medical condition was triggered.

7.  On January 31, 2018, VJ issued the Complainant a letter of reprimand.

8.  On February 13, 2018, VJ denied Complainant's request to work OT.

9.  On February 21, 2018, KB advised Complainant to provide additional medical documentation to support his reasonable accommodation request.

NOA Letter at 1–2.  Events 2, 7, and 8 were "accepted for an investigation as independently actionable claims of disparate treatment" while all nine events would be "accepted for investigation and further processing" as to an "overall harassment claim."  *Id.* at 2 (emphasis omitted).

Anyone complaining of violations of Title VII, the ADEA, or the Rehabilitation Act must exhaust his administrative remedies before filing a lawsuit in court.  *See* 42 U.S.C. § 2000e-5(f)(1); *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) ("Title VII complainants must timely exhaust their administrative remedies before bringing their claims to court.") (internal quotation marks and alterations omitted); *Barkley v. United States Marshals Serv.*, 766 F.3d 25, 33 (D.C. Cir. 2014) (claims under the Rehabilitation Act must be administratively exhausted before resorting to judicial proceedings) citing 29 U.S.C. § 794a(a)(1); *Duncan v. Johnson*, 213 F. Supp. 3d 161, 175 (D.D.C. 2016) ("Both the ADEA and Title VII require that before filing a lawsuit in federal court, a plaintiff must timely pursue and exhaust administrative remedies.").  A plaintiff's purported failure to exhaust administrative remedies is an affirmative defense, and defendants bear the

burden of pleading and proving it.[9]  *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997);

*see, e.g.*, *Scott v. Dist. Hosp. Partners, L.P.*, 60 F. Supp. 3d 156, 161 (D.D.C. 2014); *Achoe v.*

*Clayton*, No. 17-CV-02231 (CRC), 2018 WL 4374926, at *3 (D.D.C. Sept. 13, 2018).

"Title VII requires that a person complaining of a violation file an administrative charge

with the EEOC and allow the agency time to act on the charge."  *Park v. Howard Univ.*, 71 F.3d

904, 907 (D.C. Cir. 1995).  Under EEOC regulations, an employee of the federal government must

first file an EEO complaint with his agency.  *See* 29 C.F.R. § 1614.106(a); *Barkley*, 766 F.3d at

34.  "The employing agency then conducts an investigation and, if the employee so requests, refers

the matter to an EEOC administrative judge for a hearing."  *Payne*, 619 F.3d at 58, citing 29 C.F.R.

§§ 1614.106(e)(2), 1614.108–09.  After the hearing, the employing agency's "final order shall

notify the complainant whether or not the agency will fully implement the decision of the

administrative judge."  29 C.F.R. § 1614.110(a).  "An employee who is aggrieved by the agency's

_____

9       In *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006), the D.C. Circuit found that because the plaintiff had failed to file an administrative complaint regarding his Rehabilitation Act claim, the Court lacked jurisdiction over plaintiff's claims.  After the decision, many lower courts interpreted the D.C. Circuit's holding to mean that the Rehabilitation Act's exhaustion requirements were jurisdictional, unlike those in Title VII and the ADEA.  *See, e.g.*, *Moore v. Schafer*, 573 F. Supp. 2d 216, 219 & n.4 (D.D.C. 2008).  But, in *Doak v. Johnson*, 798 F.3d 1096, 1104 (D.C. Cir. 2015), the D.C. Circuit clarified that *Spinelli* did not reach so far – rather, *Spinelli* addressed a situation where the plaintiff did not file an administrative complaint at all.  Where the complainant does file an administrative complaint, and he receives a final disposition on it, "issues concerning how a claimant participates in that administrative process, both procedurally and substantively, are not of jurisdictional moment."  *Id.* at 1104, citing *Koch v. White*, 744 F.3d 162, 164–65 (D.C. Cir. 2014).  The Court therefore drew a line between "statutory and administrative exhaustion requirements."  *Williams v. Brennan*, 320 F. Supp. 3d 122, 128 (D.D.C.), *aff'd*, No. 18-5256, 2019 WL 669716 (D.C. Cir. Feb. 12, 2019).  The Rehabilitation Act contains a statutory requirement to file an administrative complaint, and so this requirement is jurisdictional in nature.  29 U.S.C. § 794a(a)(1) (remedies are available to federal government employees "to any employee . . . aggrieved by the final disposition of [an administrative EEO] complaint or by the failure [of the agency] to take final action on such complaint").  By contrast, the requirements created by EEOC regulation, are not.  *Id.*  Here, plaintiffs filed an administrative complaint with the EEOC, and thus any questions concerning whether plaintiffs exhausted their administrative remedies under the Rehabilitation Act are not jurisdictional in this case.

final disposition of her complaint may then either appeal to the EEOC or file suit in federal court pursuant to 42 U.S.C. § 2000e–16(c)."[10]  *Payne*, 619 F.3d at 58, citing 29 C.F.R. § 1614.110.

A discrimination lawsuit brought after an employee goes through this process must be limited to the claims that were alleged in the EEO complaint or that were "like or reasonably related to the allegations . . . and growing out of such allegations."  *Park*, 71 F.3d at 907 (internal citations omitted).  Neither party has provided the Court with the actual EEO complaint.  But defendants contend that any event not listed in the agency's Notice of Acceptance letter has not been administratively exhausted.

Some district courts in D.C. have examined an agency's Notice of Acceptance letter to determine whether the plaintiff administratively exhausted his remedies.  Since the object of the letter is to summarize the issues before the agency, a key question in those cases was whether the plaintiff objected to any omissions in the agency's letter.  In cases where the plaintiff did not object, courts have found that the plaintiff effectively abandoned any claims that were not listed, and  only

---

10      Plaintiffs allege that on the date that this lawsuit was filed, January 29, 2019, "Robert's Title VII EEO Complaint remained with the VA's Office of Employment Discrimination Complaint Adjudication (OEDCA) pending completion of the Final Agency Decision (FAD)."  Fourth Am. Compl. ¶ 207.  On February 14, 2019, the agency issued its final decision.  *Id.* ¶ 211.

the events in the Notice of Acceptance letter were administratively exhausted.[11]   *See Dick v. Holder*, 80 F. Supp. 3d 103, 114–15 (D.D.C. 2015) ("[W]here an agency reasonably fails to identify for investigation a claim indirectly asserted in a plaintiff's administrative charge, and where the plaintiff does not timely object to this omission before the agency, the plaintiff cannot show that he has exhausted administrative remedies as to this claim."); *Cheatham v. Holder*, 935 F. Supp. 2d 225, 237 (D.D.C. 2013) (Title VII plaintiff failed to exhaust two of four claims included in EEO charge when agency did not include those claims in the issues it agreed to investigate and "[t]hroughout the investigation" the plaintiff "never indicated that the investigation was narrower than his EEO complaint"); *McKeithan v. Boarman*, 803 F. Supp. 2d 63, 68 (D.D.C. 2011) (finding that plaintiff's "failure to respond to the [agency's] framing of the issue supports a finding that a plaintiff has failed to exhaust his administrative remedies with respect to those claims not approved by the EEO") (internal quotation marks omitted); *Green v. Small*, No. CIV.A. 05–1055(ESH), 2006 WL 148740 (D.D.C. Jan. 19, 2006) (finding that a complainant abandons a claim that was alleged in a EEO complaint but not included in an agency's acceptance of claims letter where the complainant fails to respond to the agency's acceptance of claims letter).

---

11      In *Mokhtar v. Kerry*, the court found that even where plaintiff did not object to an omission in the notice of acceptance letter, the claim was administratively exhausted because the EEO complaint plainly included the claim. 83 F. Supp. 3d 49 (D.D.C. 2015), *aff'd*, No. 15-5137, 2015 WL 9309960 (D.C. Cir. Dec. 4, 2015).  It observed that:

> [A]n acceptance-of-claims letter, though organizationally useful in clarifying the topics to be investigated, is not a mandated pre-investigation procedure under any statute or regulation insofar as the agency is not required to identify for the complainant the specific claims that it will investigate following an EEO complaint and the complainant is not required to respond within a certain time to avoid waiving those claims.

*Id.* at 65.

Here, the Fourth Amended Complaint contains multiple allegations that: the list of nine events "accepted" by the agency incorrectly omitted charges that plaintiffs attempted to include in their EEO complaint; plaintiffs endeavored to correct those mistakes; and plaintiffs repeatedly asked that claims be added to their EEO complaint to no avail.  *See, e.g.*, Fourth Am. Compl. ¶¶ 72, 102.  When deciding a motion to dismiss, the Court is required to treat allegations in the complaint as true.  Therefore, without the EEO complaint or any amended complaints, or any correspondence in response to the Notice of Acceptance letter, the Court cannot determine from the face of the complaint which claims have been exhausted, and it would be inappropriate to dismiss parts of plaintiffs' claims on this basis at this stage of the proceedings.

Thus, the Court finds for now that defendants have failed to meet their burden to show that plaintiffs failed to exhaust their administrative remedies with respect to any allegations in the complaint that do not appear in the Notice of Acceptance letter.  And because this is the only basis upon which defendants moved to dismiss the ADEA, Rehabilitation Act, and Title VII claims, the Court will not dismiss any of these claims at this time.  The Court cautions that this matter may be renewed at the summary judgment stage, when plaintiffs will need to supply evidence to establish the facts underlying each element of their allegations, and the defendants will be required to supply evidence that shows the lack of any genuine dispute of fact on any issue for which they bear the burden of proof.  And before we reach that stage, it may be necessary for the plaintiffs to clarify the specific nature of their employment claims.

With respect to Claim 7, however, the Court does find that plaintiffs have failed to exhaust their administrative remedies. Claim 7 alleges that Mr. Bozgoz was constructively discharged in violation of Title VII "because the actions of the Department of Veterans Affairs . . . were so

17

intolerable that he had no other choice than to resign on 2 [April] 2019."[12]  Fourth Am. Compl. ¶ 311.  This claim could not have gone through the required administrative exhaustion process, because plaintiffs filed their original complaint in this Court on January 29, 2019.  While this claim could be regarded as "reasonably related" to those claims provided for in the EEO Complaint, the D.C. Circuit has held that "under that doctrine, it must '[a]t a minimum . . . arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination.'"  *Payne*, 619 F.3d at 65, quoting *Park*, 71 F.3d at 907.  The investigation that took place was conducted in the spring and summer of 2018, an EEOC Administrative Law Judge considered the issues in November 2018, and on February 14, 2019, the agency issued a final decision.  *See* Fourth Am. Compl. ¶¶ 204, 207.  Thus, plaintiffs' constructive discharge claim "could not possibly have arisen" during the "administrative investigation" that followed the January 2018 EEO complaint. For that reason, plaintiffs have failed to exhaust the constructive discharge claim, and it will be dismissed.  *Payne*, 619 F.3d at 65; *see also* Fourth Am. Compl. at 221 (asserting that plaintiffs exhausted their administrative remedies when they filed the EEO Complaint in January 2018); *Hudson v. Children's Nat. Medical Ctr*., 645 F. Supp. 2d 1, 6–7 (D.D.C. 2009) (finding the constructive discharge claim could not have been administratively exhausted because the EEO Complaint only included discriminatory acts within a certain time period, and the constructive discharge occurred four months after that time).

Plaintiffs' Title VII, Rehabilitation Act, and ADEA claims will be moving forward.  But under those laws, the only appropriate defendant is the "head of the . . . agency" that employs the plaintiff.  42 U.S.C. § 2000e-16(c); *see, e.g.*, *Richardson v. Yellen*, 167 F. Supp. 3d 105, 118

---

12     The Court notes that Mr. Bozgoz was constructively discharged on April 2, 2019, which is an event that has been severed from this case.  *See* Order Severing Case.  But, since the constructive discharge claim is based partly upon events in this case, the Court will consider it.

(D.D.C. 2016) (stating that under the Rehabilitation Act, "only the heads of federal agencies in their official capacity may be sued, not their individual employees").  The appropriate defendant here, then, is Robert Wilkie, in his official capacity as the Secretary of the VA, and the Court will dismiss all of the other individuals named in the complaint from that claim.  *See Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995).

## II.     Section 1983 does not apply to federal employees, and it is well-established that the Court should not imply a *Bivens* remedy in an employment case.

Plaintiffs allege that they are entitled to damages for a number of constitutional violations under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

Section 1983 creates liability for a person "acting under color of state law" who deprives an individual of his constitutional rights.  42 U.S.C. § 1983.  But there are no state actors named as defendants in the complaint – all defendants are federal employees.[13]  Thus, section 1983 does not apply.  *Abramson v. Bennett*, 707 F. Supp. 13, 16 (D.D.C. 1989), *aff'd*, 889 F.2d 291 (D.C. Cir. 1989) (Section 1983 applies only to state officials acting under color of state law).

Claim 2 also alleges a *Bivens* claim, based upon violations of the First, Third, Fourth, Fifth, and Ninth Amendments to the U.S. Constitution.  In *Bivens v. Six Unknown Fed. Narcotics Agents*, the Supreme Court implied a cause of action for damages against federal agents who allegedly violated the Constitution.  403 U.S. 388 (1971); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 473 (1994) (describing a *Bivens* remedy).

The D.C. Circuit has stated that courts have "discretion in some circumstances to create a remedy against federal officials for constitutional violations, but we must decline to exercise that

---

13     Any state officials that were named in the Fourth Amended Complaint have since been severed and are no longer before this court.  Order Severing Case; Fourth Am. Compl. at 132–49, ¶¶ 276–279.  And Dr. Klein is a federal contractor, not a state actor.  Fourth Am. Compl. at 19.

discretion where 'special factors counsel[ ] hesitation' in doing so." *Wilson v. Libby*, 535 F.3d 697, 704 (D.C. Cir. 2008), quoting *Bivens*, 403 U.S. at 396.  "One 'special factor' that precludes creation of a *Bivens* remedy is the existence of a comprehensive remedial scheme." *Wilson*, 535 F.3d at 705; *see Ziglar v. Abbasi*, 137 S.Ct. 1843, 1858 (2017) (noting that "an alternative remedial structure . . . alone may limit the power of the Judiciary to infer a new *Bivens* cause of action"); *Minneci v. Pollard*, 565 U.S. 118, 125 (2012) (where plaintiff's "Eighth Amendment claim focuse[d] upon . . . conduct that typically falls within the scope of state tort law, . . . [and] state tort law provides an 'alternative, existing process' capable of protecting the constitutional interests at stake" the Court declined to provide a new remedy for damages).  The Supreme Court has also stated that a remedial scheme need not provide full relief to the plaintiff to qualify as a "special factor."  *See Wilkie v. Robbins*, 551 U.S. 537, 562 (2007) (declining to imply a *Bivens* remedy for allegedly harassing conduct of government officials because such a remedy would "come better, if at all, through legislation"); *Schweiker v. Chilicky*, 487 U.S. 412 (1988) (declining to imply a *Bivens* remedy for emotional distress harms suffered as a result of delays in receiving Social Security benefits because the government program suggested that Congress has provided what it considers an adequate remedial mechanisms for constitutional violations that occur in the course of its administration).

Here, plaintiffs' claims are based on the government's decision to deny Mr. Bozgoz overtime in January 2018 and other allegedly discriminatory or retaliatory actions that plaintiffs claim were improperly motivated by Mr. Bozgoz's race, age, and disability.  Title VII, the Rehabilitation Act, and the ADEA are comprehensive remedial schemes that specifically prescribe a remedy for these sorts of violations.  *See Bush v. Lucas*, 462 U.S. 367, 388–90 (1983) (finding no *Bivens* cause of action because "petitioner's claims arise out of an employment relationship that

is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States, [so] it would be inappropriate for this Court to supplement that regulatory scheme with a new nonstatutory damages remedy"); *Ethnic Employees of Library of Congress v. Boorstin*, 751 F.2d 1405, 1414–16 (D.C. Cir. 1985) (Title VII is a comprehensive remedial scheme that precludes a *Bivens* remedy).

The Court is bound by these precedents to decline to imply a *Bivens* remedy in this case, and the Court will dismiss Claim 2.

## III.     Plaintiffs fail to state a claim for any of the "Common Law Causes of Action" listed in Claim 3.

Claim 3 sets forth "Common Law Causes of Action" including: common law conspiracy, common law assault, perjury, subornation of perjury, false imprisonment/detention, and slander. Fourth Am. Compl. ¶ 307.  This claim is based upon events that have been severed from the complaint, such as the alleged assault that occurred on the plaintiffs' process server and the subsequent Maryland criminal actions that arose.  Thus, there are no allegations in the complaint that would support these torts, and the Court will dismiss Claim 3.

The only "common law cause of action" that is based upon factual allegations remaining in the complaint is conspiracy.  *See, e.g.*, Fourth Am. Compl. ¶ 16 (various government employees "conspire" and give Mr. Bozgoz a letter of reprimand); ¶ 22 (government employees "conspired and designed 3 claims in VA's favor in advance").  But it is well-established under District of Columbia law that common law "[c]ivil conspiracy depends on the performance of some underlying tortious act[;]" it is not an independent action, but instead, "a means for establishing vicarious liability for the underlying tort." *See Weishapl v. Sowers*, 771 A.2d 1014, 1023 (D.C. 2001), quoting *Griva v. Davison*, 637 A.2d 830, 848 (D.C. 1994); *see also Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983).  While there are statutory violations that will move

forward in this case, the complaint pending before this Court does not allege the commission of any torts that could serve as the basis for a common law conspiracy claim.

Moreover, plaintiffs have failed to state a claim for common law conspiracy because they merely repeat the word "conspiracy" and fail to plead any facts showing: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam*, 705 F.2d at 477 (internal citation omitted).  Plaintiff's conspiracy claim is based on nothing more than vague and conclusory allegations, and "'[t]he mere repetition of a conclusory statement that a conspiracy exists and that all the alleged events occurred as a result of a conspiracy are insufficient as a matter of law.'"  *Karim-Panahi v. 4000 Massachusetts Apartments*, 302 F. Supp. 3d 330, 337–38 (D.D.C. 2018), *aff'd*, No. 18-7054, 2018 WL 6167393 (D.C. Cir. Nov. 1, 2018), citing *Lemon v. Kramer*, 270 F.Supp.3d 125, 142–43 (D.D.C. 2017) (other citations omitted).  Therefore, Claim 3 will be dismissed.

## IV.  Plaintiffs fail to state a Privacy Act claim.

Claim 4 alleges that defendants violated the Privacy Act when they "[i]mproperly accept[ed] medical records when they were not privileged to do so"; "[c]hang[ed] dates on historical documents"; and "[a]ccessed [plaintiffs'] records when they were not authorized to do so."  Fourth Am. Compl. ¶ 308(D).  The Court finds that plaintiffs have failed to state a claim under the statute, and the motion to dismiss Count IV will be granted.

The Privacy Act "safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records . . . by allowing an individual to participate in ensuring that his records are accurate and properly used."  *Henke v. U.S. Dep't of*

*Commerce*, 83 F.3d 1453, 1456 (D.C. Cir. 1996), quoting *Bartel v. FAA*, 725 F.2d 1403, 1407 (D.C. Cir. 1984).  It mandates that each agency "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5).

To state a cognizable claim for damages under the Privacy Act, "plaintiff[s] must allege that (i) the agency 'intentional[ly] or willful[ly]' violated the Act's requirements for protecting the confidentiality of personal records and information; and (ii) [they] sustained 'actual damages' (iii) 'as a result of' that violation."[14]  *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d

---

14      The Privacy Act provides that an "individual may bring a civil action against the agency" whenever the agency:

> (A) makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection;
>
> (B) refuses to comply with an individual request under subsection (d)(1) of this section;
>
> (C) fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual; or
>
> (D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual[.]

5 U.S.C. § 552a(g)(1).  Plaintiffs do not specify under which provision they are bringing their claim, but, based upon the complaint, the Court will construe the claim to be brought under subsection (c).  *See, e.g.*, Fourth Am. Compl. ¶¶ 28, 185 (alleging that defendants changed the date on a "[reasonable accommodation] document"); *id.* ¶ 291 (alleging that defendants "falsified the EEO documents/claims"); *id.* ¶ 293 ("falsified 2016 medical records").

42, 62 (D.C. Cir. 2019), quoting 5 U.S.C. § 552a(g)(4). "[A]ctual damages" means "special damages for proven pecuniary loss." *F.A.A. v. Cooper*, 566 U.S. 284, 298 (2012) (internal quotation marks omitted). The Supreme Court has held that Congress did not intend the Privacy Act to constitute a waiver of the government's sovereign immunity where a plaintiff brings a claim under this law for "general damages" including "mental or emotional distress." *See id.* at 298–303. Furthermore, the Privacy Act does not provide a remedy against individual government employees. *Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) (affirming the district court's decision to dismiss the named individual defendants because no cause of action under the Privacy Act exists against individual defendants), citing 5 U.S.C. § 552a(g)(1) (authorizing an individual to bring a suit against an agency).

Claim 4, then, is flawed in numerous ways. First, no federal agency is named as a defendant in this case. Second, as defendants point out, plaintiffs have not alleged that they suffered actual damages caused by the alleged Privacy Act violations. While plaintiffs request general damages in the amount of $5,000,000 in connection with all of their claims, Fourth Am. Compl. at 221, they do not specify any pecuniary losses they incurred as a result of the Privacy Act violations. For that reason, the Court will dismiss Claim 4.

## V.   There is no private right of action under the Occupational Safety and Health Act.

In Claim 5, plaintiffs allege a violation of the Occupational Health and Safety Act. Fourth Am. Compl. ¶ 309. They claim that defendants committed "discriminatory acts" against plaintiffs by failing to provide reasonable accommodations and "[f]ailing to perform safety assessments after being requested." *Id.* But this does not state a viable claim, first because "OSHA violations do not themselves constitute a private cause of action for breach." *Am. Fed'n of Gov't Employees, AFL-CIO v. Rumsfeld*, 321 F.3d 139, 143 (D.C. Cir. 2003), quoting *Crane v. Conoco, Inc.*, 41 F.3d 547, 553 (9th Cir. 1994). Second, the definition of "employer" in OSHA explicitly precludes the

United States.  29 U.S.C. § 652(5).  While the act requires federal agencies to "provide safe and healthful places and conditions of employment," it is clear from the statute that "Congress did not intend private litigants to enforce the OSH Act against federal agencies."  *Am. Fed'n of Gov't Employees*, 321 F.3d at 144, quoting *Fed. Employees for Non-Smokers' Rights v. United States*, 446 F. Supp. 181, 183 (D.D.C. 1978), *aff'd*, 598 F.2d 310 (D.C. Cir. 1979).  Claim 5 will therefore be dismissed.

## VI.   Plaintiffs fail to state claims under the statutes listed under Claim 6.

In Claim 6, plaintiffs allege what they call "statutory discrimination" and they aver that defendants discriminated against them on the basis of race, color, gender/sex, age, and disability in violation of seven statutes:  (1) 18 U.S.C. § 1501 (Assault on a process server); (2) 42 U.S.C. § 1981 (Equal rights under the law); (3) 42 U.S.C. § 1985 (Conspiracy to interfere with civil rights); (4) 42 U.S.C. § 1986 (Action for neglect to prevent); (5) 18 U.S.C. § 241 (Conspiracy against rights); (6) 18 U.S.C § 242 (Deprivation of rights under color of law); and (7) the Americans with Disabilities Act.  Fourth Am. Compl. ¶ 310.

The Court notes that portions of this claim pertain to factual allegations that were previously severed from the Fourth Amended Complaint and are no longer part of this lawsuit, including the allegation of assault on the process server in violation of 18 U.S.C. § 1501. Furthermore, the two other criminal statutes plaintiffs listed – 18 U.S.C. §§ 241, 242 – cannot be invoked by a private citizen in a civil action and cannot form the basis of plaintiffs' claim.  Also, plaintiffs rely on the ADA as they did in Claim 1, and, as noted above, the ADA does not apply to the federal government.

What's left?  Plaintiffs' claim under 42 U.S.C. § 1981 must also be dismissed because (1) it is preempted by plaintiffs' Title VII claims, and (2) the federal government may not be sued under this statute.  The Supreme Court has made it clear that Title VII of the Civil Rights Act of

1964 "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Brown v. General Services Administration*, 425 U.S. 820, 835 (1976); *see Williams v. Bentsen*, No. 93–5192, 1993 WL 469110 at *1 (D.C. Cir. Nov. 5, 1993) ("[I]t is well established that Title VII provides the exclusive judicial remedy for claims of discrimination in federal employment."). Because Title VII provides an exclusive remedy, claims covered by Title VII may not be brought under other federal statutes, including 42 U.S.C. § 1981. *Kizas v. Webster,* 707 F.2d 524, 542 (D.C. Cir. 1983); *Torre v. Barry*, 661 F.2d 1371, 1374 (D.C. Cir. 1981) ("[A] federal employee who is covered by section 717 [of Title VII] may not sue under section 1981 or the Fifth Amendment.").

Furthermore, "a federal employee . . . may not bring an employment discrimination claim pursuant to 42 U.S.C. § 1981." *Robinson v. Chao*, No. 05–5445, 2006 U.S. App. LEXIS 12550, at *3 (D.C. Cir. May 2, 2006). The text of the statute states that certain enumerated rights are protected "against impairment by nongovernmental discrimination and impairment under color of *State* law," 42 U.S.C. § 1981(c) (emphasis added), which "support[s] the conclusion that instrumentalities of the federal government may not be sued under § 1981." *Prince v. Rice*, 453 F. Supp. 2d 14, 26 (D.D.C. 2006); *see also Strong-Fisher v. LaHood*, 611 F. Supp. 2d 49, 53 (D.D.C. 2009) (dismissing § 1981 claims because plaintiff was a federal employee bringing discrimination claims against the Secretary of the Department of Transportation).

Any portion of the claim supposedly based on 42 U.S.C. § 1985 must also be dismissed because the civil rights conspiracy provision "may not be invoked to redress violations of Title VII." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979). This statute "provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates." *Id.* at 372. The Supreme Court found that an alleged conspiracy to violate Title VII

does not support a claim that the plaintiff was "deprived of 'the equal protection of the laws, or of equal privileges and immunities under the laws' within the meaning of § 1985(3)" because allowing such a claim would allow a complainant to avoid the "detailed and specific provisions" of Title VII. *Id.* at 372, 390. This also means that the Court must dismiss the claim to the extent it is brought under 42 U.S.C. § 1986, because "a colorable claim under § 1985 is a prerequisite to a claim under § 1986." *Leonard v. George Wash. Univ. Hosp.*, 273 F. Supp. 3d 247, 256 (D.D.C. 2017), quoting *Philogene v. District of Columbia*, 864 F. Supp. 2d 127, 132 (D.D.C. 2012). Since none of the statutes supply a basis for civil liability, Claim 6 will be dismissed in its entirety.

## VII.    Plaintiffs fail to allege any allegations to support Claims 8, 9, and 10.

Plaintiffs allege a violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act in Claim 8. Fourth Am. Compl. ¶ 312(B). To state a claim under the RICO statute, plaintiffs must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Western Assocs. Ltd. P'ship v. Market Square Assocs.*, 235 F.3d 629, 633 (D.C. Cir. 2001) (citations omitted). A "pattern of racketeering activity" requires the commission, within a 10-year period, of what the statute refers to as "predicate acts." Predicate acts are crimes, and not just any crimes, but crimes punishable under certain enumerated criminal statutes. 18 U.S.C.

§ 1961(5).  Plaintiffs have not alleged any predicate offenses.[15]  For that reason, the claim will be dismissed.

Claim 9 states that "the VA violated the Fair Labor Standards Act by not allowing [Mr. Bozgoz] sufficient administrative leave/official time to prepare all affidavits and other documents needed to prosecute the claims at the administrative level."  Fourth Am. Compl. ¶ 313.  But, administrative leave is not guaranteed or required by the Fair Labor Standards Act, and the Fourth Amended Complaint does not include any allegation that could be construed to support a Fair Labor Standards Act claim.

Plaintiffs bring a claim they entitle "Whistleblowing Activity" in Claim 10, alleging that "defendants violated the Civil Service Reform Act (CSRA) by discriminating and retaliating against [Mr. Bozgoz] for being married to [his] ADA Representative who blew the whistle on the VA."  Fourth Am. Compl. ¶ 314.  The law sets forth an administrative process that a complainant must undergo before bringing a suit for retaliation against a whistleblower under the CSRA. *Weaver v. United States Info. Agency*, 87 F.3d 1429, 1433 (D.C. Cir. 1996) ("Under the CSRA, exhaustion of administrative remedies is a jurisdictional prerequisite to suit."), citing *Steadman v. Governor, United States Soldiers' & Airmen's Home*, 918 F.2d 963, 966–68 (D.C. Cir. 1990). Plaintiffs have not alleged that they exhausted their administrative remedies under this law by first

---

15      Plaintiffs allege that the "historical acts of Racketeering Activity are outlined in the attached affidavits (Exhibits 1-3)."  Fourth Am. Compl. ¶ 312(B).  The first exhibit is a criminal summons for Mr. Bozgoz issued by Maryland State Court, Ex. 1 to Fourth Am. Compl. [Dkt. # 41-1], but the Court severed these events from the fourth amended complaint, so the Maryland criminal proceedings are not relevant here.  *See* Order Severing Case.  And if anything, the summons alleges a crime committed by a plaintiff, not a defendant.  The second exhibit is a statement from James M. DeNofrio who testified before the House Subcommittee on Oversight and Investigations Committee on Veterans Affairs on June 25, 2019.  Ex. 2 to Fourth Am. Compl. [Dkt. # 41-1].  The third exhibit is a declaration from Jamie N. Fox, another former employee of the VA who states he was terminated for his so-called "whistleblower activities."  Ex. 3 to Fourth Am. Compl. [Dkt. # 41-1].  None of these exhibits set forth a predicate offense for RICO liability.

filing a complaint with the Office of Special Counsel.  5 U.S.C. § 1214(a)(1)(A).[16]  Since the Court

does not have jurisdiction over the claim, it will be dismissed.

### VIII.    Claims 11 and 12 are preempted by Title VII.

Claims 11 and 12 must be dismissed because Title VII preempts tort claims arising out of

the same events that underlie discrimination claims.  Claim 11 alleges common law negligence

and negligence "under Title II of the ADA."  Fourth Am. Compl. ¶ 315.  The Fourth Amended

Complaint then refers to Claims 1 and 2 "for the specific facts showing acts and omissions what

each defendant did that caused the plaintiffs harms."  *Id.*  Claim 12 alleges that plaintiffs suffered

emotional distress as a result of defendants' actions.  *Id.* ¶ 316.

Title VII "provides the exclusive judicial remedy for claims of discrimination in federal

employment."  *Brown*, 425 U.S. at 835. This includes both constitutional claims and common law

tort claims arising out of the same conduct that forms the basis for a plaintiff's Title VII claim.

*Ramey v. Bowsher*, 915 F.2d 731, 734 (D.C. Cir. 1990) ("[T]o the extent that [plaintiff] attempts

to recast his tort claims against the supervisors as pure discrimination claims, they are in any event

barred by the exclusive character of the Title VII remedy."); *Kizas v. Webster*, 707 F.2d 524, 542

(D.C. Cir. 1983) ("The Title VII remedy declared exclusive for federal employees in *Brown v.

GSA* precludes actions against federal officials for alleged constitutional violations as well as

actions under other federal legislation."); *see also Pueschel v. United States*, 369 F.3d 345, 353

(4th Cir. 2004) (dismissing negligent and intentional infliction of emotional distress claims as

preempted by Title VII).  Thus, tort claims that arise out of the same conduct giving rise to the

Title VII claims are preempted by Title VII and must be dismissed.  *Leach v. AMTRAK*, 128 F.

---

16    Indeed, plaintiffs recognize that "the Office of Special Counsel and the Merit Systems
Protection Board enforce the CSRA" but they request that the "rules and regulations be changed."
Fourth Am. Compl. ¶ 314.

Supp. 3d 146, 156 (D.D.C. 2015). "Along similar lines, for disability discrimination claims, the Rehabilitation Act 'is the sole judicial remedy for federal employees alleging disability discrimination' and accordingly preempts any emotional distress claim arising from disability discrimination." *Coulibaly v. Kerry*, 213 F. Supp. 3d 93, 125–26 (D.D.C. 2016) (internal citations omitted). For that reason, Count 12 will be dismissed.

If Mr. Bozgoz establishes a violation of the employment statutes in Count 1, though, he will be able to seek damages for emotional distress as part of his case.

To the extent plaintiffs are claiming that they experienced emotional distress from the way their grievances were handled by the VA, *see* Fourth Am. Compl. ¶ 207, rather than the conduct that gave rise to the discrimination claims (the denial of working overtime and the denial of reasonable accommodations), plaintiffs have also failed to state a claim for negligent infliction of emotional distress or intentional infliction of emotional distress.

"The tort of negligent infliction of emotional distress in [the District of Columbia] requires a plaintiff to show that he or she was (1) in the 'zone of danger;' which was (2) created by the defendant's negligence; (3) making the plaintiff fear for his or her own safety; resulting in (4) emotional distress that was serious and verifiable." *Jograj v. Enter. Servs., LLC*, 270 F. Supp. 3d 10, 26–27 (D.D.C. 2017), citing *Rice v. District of Columbia*, 774 F. Supp. 2d 25, 33 (D.D.C. 2011) and *Williams v. Baker*, 572 A.2d 1062, 1067 (D.C. 1991). "To be in the zone of danger, a plaintiff must be 'physically endangered by the defendant's negligent activity.'" *Destefano v. Children's Nat'l Med. Ctr.*, 121 A.3d 59, 69 (D.C. 2015), quoting *Johnson v. District of Columbia*, 728 A.2d 70, 77 (D.C. 1999).

Here, there are no allegations that any of the defendants placed either plaintiff in the "zone of danger" – there is no allegation that plaintiffs were in danger of physical injury, such that they

feared for their own safety. *See Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 796 (D.C. 2011) (en banc). And, there is no allegation that defendants and plaintiffs had a "special relationship" that would permit recovery for negligent infliction of emotional distress. *Hedgepeth*, 22 A.3d at 802.

A claim for intentional infliction of emotional distress, in the absence of physical injury, requires the plaintiff to demonstrate (1) extreme and outrageous conduct by the defendant that (2) intentionally or recklessly (3) caused the plaintiff severe emotional distress. *Abourezk v. New York Airlines, Inc.*, 895 F.2d 1456, 1458 (D.C. Cir. 1990). The conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Bernstein v. Fernandez*, 649 A.2d 1064, 1075 (D.C. 1991), quoting Restatement (Second) of Torts § 46, cmt. d (Am. Law. Inst. 1965). Liability "clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities;" it is imposed only when the conduct goes "beyond all possible bounds of decency and [is] regarded as atrocious and utterly intolerable in a civilized community." *Waldon v. Covington*, 415 A.2d 1070, 1076 (D.C. 1980), quoting Restatement (Second) of Torts § 46 cmt. d (Am. Law Inst. 1975). Under District of Columbia law, "[t]he requirement of outrageousness is not an easy one to meet." *Drejza v. Vaccaro*, 650 A.2d 1308, 1312 (D.C. 1994), citing *Bown v. Hamilton*, 601 A.2d 1074, 1079 (D.C. 1992).

Here, plaintiffs do not allege "extreme and outrageous" conduct. The conduct that plaintiffs alleged caused their emotional distress include: the agency asking for additional documentation, investigating the events in question, failing to add additional claims to the EEO complaint, denying requests for days off to work on their EEO claims, and other actions taken in the course of mediating plaintiffs' concerns. This does not constitute the "extreme and outrageous" conduct that could form the basis of an IIED claim. *See, e.g.*, *Carty v. CVS Pharmacy, LLC*, 264

F. Supp. 3d 190, 196–97 (D.D.C. 2017) (dismissing IIED claim where plaintiff alleged that she was denied services and subjected to "verbal maltreatment" because it was not sufficiently outrageous conduct); *Hollis v. Rosa Mexicano DC, LLC*, 582 F.Supp.2d 22, 24, 27 (D.D.C. 2008) (dismissing IIED Claim where the plaintiff, an African-American woman, alleged that she attempted to secure a table at a restaurant, but was ignored, denied a reservation buzzer, and received "abusive responses" to her inquiries that were "abrasive and sharp-toned"); *McManus v. MCI Commc'ns Corp.*, 748 A.2d 949, 958 (D.C. 2000) (allegations of employer's "racist conduct" and "comments made about [plaintiff's] appearance [that] offended [plaintiff's] personal dignity and were offensive to her heritage as an African-American woman" did "not rise to the level required to proceed with a claim for intentional infliction of emotional distress").

Thus, Claims 11 and 12 will be dismissed.

## IX. Defendant Frances Del Toro is protected by absolute immunity, and so her motion to dismiss will be granted.

"Judges enjoy absolute judicial immunity from suits for money damages for all actions taken in the judge's judicial capacity, unless these actions are taken in the complete absence of all jurisdiction." *Sindram v. Suda*, 986 F.2d 1459, 1460 (D.C. Cir. 1993), citing *Mireles v. Waco*, 502 U.S. 9, 9 (1991).  Actions taken in the judge's official capacity include the performance of tasks that are an "integral part of the judicial process." *Id.*

Defendant Judge Frances Del Toro served as an Administrative Judge at the EEOC at the time plaintiffs' claims arose.  Fourth Am. Compl. at 25 (bringing claims against defendant Frances Del Toro in her "individual and official capacity" as an administrative law judge at the EEOC). All of plaintiffs' claims against Judge Del Toro arise out of her adjudication of plaintiffs' claims while acting in her official capacity at the EEOC.  *See, e.g.*, *id.* ¶ 174 (claiming that Judge Del Toro ignored Mr. Bozgoz's motion to appoint an administrative judge, motion for default

judgment, and reasonable accommodation); *id.* ¶ 182 (describing how plaintiffs informed Judge Del Toro that certain documents were falsified); *id.* ¶ 186 (stating that plaintiffs informed Judge Del Toro that a certain "[r]eport" was "fraud"); *id.* ¶ 187 (explaining that plaintiffs moved to recuse Judge Del Toro for "not following EEOC Management Directive 110"); *id.* ¶¶ 188, 191 (additional allegations concerning falsified documents being presented to Judge Del Toro), *id.* ¶ 197 (claims that Judge Del Toro used allegedly false documents); *id.* ¶ 204 (stating that the Judge Del Toro issued an order of dismissal in the EEOC case).

Because all of plaintiffs' allegations against Judge Del Toro concern actions that she took in her official capacity, she enjoys absolute immunity, and the Court will grant her motion to dismiss.

## CONCLUSION

For the reasons stated above, the Court will grant defendants' partial motion to dismiss in part and deny it in part [Dkt. # 52], and it will grant defendant Del Toro's motion to dismiss [Dkt. # 57]. It will also dismiss the claims against Dr. Anne Klein. *See* [Dkt. # 54]. Thus, the only remaining defendant in this action will be Robert Wilkie, in his official capacity as Secretary of Veterans Affairs, and the only claim going forward will be Claim 1 – which is comprised of claims based on violations of Title VII, the ADEA, and the Rehabilitation Act.

All of the remaining claims relate solely to alleged acts of discrimination and retaliation against Mr. Bozgoz, who is the only plaintiff alleged to be a federal employee subject to the protection of Title VII, the Rehabilitation Act, and the ADEA. Since there are no factual

allegations underlying Claim 1 that give rise to claims that Mrs. Bozgoz can pursue in her own right, she is hereby dismissed from the case as a plaintiff.

Mr. Bozgoz is permitted to proceed *pro se* and represent himself.  But a non-lawyer cannot represent another person in a civil action, so Mrs. Bozgoz may not represent her husband's interests in this case. *See* Fed. R. Civ. P. 11(a); *but see* Fed. R. Civ. P. 17 (providing for the appointment of a guardian ad litem for an incompetent person who does not have a duly appointed representative). However, plaintiff Robert Bozgoz may inform the Court by September 4, 2020 if he is requesting that the Court appoint counsel to represent him or if Rule 17 is applicable.

Finally, there is the matter of the counter-claims brought by Dr. Klein.  The Court will order Dr. Klein to show cause by September 4, 2020 why the Court has subject matter jurisdiction given the amount-in-controversy requirement of diversity jurisdiction.  28 U.S.C. § 1332(a).  Dr. Klein will be further ordered to show cause why venue is appropriate in the District of Columbia. *See* 28 U.S.C. § 1391(b) ("A civil action may be brought in – (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]").  Any

remaining participation by Mrs. Bozgoz in this case as a counter-defendant will be determined after the Court has received Dr. Klein's response.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  August 14, 2020